# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Encompass Health Rehabilitation Hospital of Desert Canyon, LLC, et al.,

     Plaintiffs

v.

Robert F. Kennedy, Jr., United States Secretary of Health and Human Services,[1]

     Defendant

Case No.: 2:22-cv-01912-JAD-BNW

**Order Denying Encompass's Motion for Summary Judgment, Granting the Secretary's Motion for Summary Judgment, and Closing Case**

[ECF Nos. 40, 41]

Plaintiffs, Encompass Health Rehabilitation Hospitals in Desert Canyon, Las Vegas, and Henderson, (collectively, "Encompass") challenge the denial of Medicare coverage for 256 patients who were enrolled in inpatient rehabilitation-facility (IRF) services at those hospitals. In each case, the administrative-law judge (ALJ) determined that the patient's medical condition did not meet the criteria for IRF services. The Medicare Appeals Council (MAC) affirmed the ALJs' decisions on the basis that Encompass's appellate statement didn't adequately explain what aspects of the decisions it was appealing, as required by 42 C.F.R. § 405.1112(b).

The parties crossmove for summary judgment. Encompass contends that its appellate statements satisfied § 405.1112(b), that the MAC arbitrarily and inconsistently applies that regulation, and that some ALJ decisions contained legal errors that the MAC overlooked. It also contends that some ALJ decisions were not supported by substantial evidence and that, in others, the ALJs didn't give a sufficient explanation for their decisions. The Secretary contends that Encompass's barebones appellate statement before the MAC fell far short of meeting the

---

[1] Robert F. Kennedy Jr. is the current United States Secretary of Health and Human Services, so I direct the Clerk of Court to substitute him as the defendant in this case under Federal Rule of Civil Procedure 25(d).

regulation's requirement, the legal errors Encompass identifies are invalid, and each decision is supported by substantial evidence and a sufficient explanation.

I grant the Secretary's motion for summary judgment and deny Encompass's. Section 405.1112(b) requires represented claimants to "identify the parts" of the ALJ's decision with which they disagree and "explain why he or she disagrees" with those parts. Encompass's one-sentence, perfunctory statements do not satisfy that standard, so the MAC was not required to conduct an in-depth review of the ALJ's decisions. I also conclude that Encompass's claims of legal error are unconvincing and that ALJs' challenged decisions were supported by substantial evidence and a sufficient explanation. So I affirm the MAC's findings for all challenged decisions and close this case.

<strong>Discussion</strong>

**A.      The Medicare appeals framework for IRF services**

   *1.      Medicare covers reasonable and necessary inpatient rehabilitation services.*

Medicare Part A provides reimbursement to medical providers for various costs associated with inpatient services for Medicare-eligible patients.[2] To qualify for coverage, the provided services must be "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."[3] The provider seeking reimbursement must "furnish . . . sufficient information to determine whether payment is due and the amount of payment."[4]

---

[2] 42 U.S.C. § 1395d (establishing the scope of benefits and reimbursement under Medicare Part A).

[3] 42 U.S.C. § 1395y(a)(1)(A).

[4] 42 C.F.R. § 424.5(a)(6).

2

As relevant here, IRF services may be eligible for Medicare coverage.[5]  Medicare regulations explain that for an IRF claim to be considered reasonable and necessary, there "must be a reasonable expectation that the patient meets" four requirements "at the time of the patient's admission to the IRF":

> (i)    [the patient] requires the active and ongoing therapeutic intervention of multiple therapy disciplines (physical therapy, occupational therapy, speech-language pathology, or prosthetics/orthotics therapy), one of which must be physical or occupational therapy[;]
>
> (ii)   [the patient] generally requires and can reasonably be expected to actively participate in, and benefit from, an intensive rehabilitation therapy program . . . [that] generally consists of at least three hours of therapy . . . per day at least 5 days a week. . . . Benefit from this intensive rehabilitation therapy program is demonstrated by measurable improvement that will be of practical value to the patient in improving the patient's functional capacity or adaptation to impairments.  The required therapy treatments must begin within 36 hours from midnight of the day of admission to the IRF[;]
>
> (iii)  [the patient] is sufficiently stable at the time of admission to the IRF to be able to actively participate in the intensive rehabilitation therapy program . . . [; and]
>
> (iv)   [the patient] requires physician supervision by a rehabilitation physician [who] must conduct face-to-face visits with the patient at least 3 days per week through the patient's stay in the IRF to assess the patient both medically and functionally, as well as to modify the course of treatment as needed to maximize the patient's capacity to benefit from the rehabilitation process . . . .[6]

The regulations also require that "in order for an IRF claim to be considered reasonable and necessary . . . , the patient must require an interdisciplinary team approach to care, as evidenced by documentation in the patients' medical record of weekly interdisciplinary team meetings" that

---

[5] 42 U.S.C. § 1395ww(j).

[6] 42 C.F.R. § 412.622(a)(3)(i–iv).

are held at least once a week and include a rehabilitation physician, registered nurse, and a licensed "therapist from each therapy discipline involved in threating the patient."[7]

### 2. *The Medicare framework includes a four-step appeals process for beneficiaries who were denied coverage.*

The Medicare statute provides a multi-step appeal process for those who wish to contest the initial denial of coverage for IRF services. The claimant first seeks redetermination from the initial contractor tasked with assessing coverage, then it can seek reconsideration by an qualified independent contractor.[8] If those appeals fail, the claimant may request a hearing before an ALJ.[9] The ALJ is responsible for compiling a "complete record of the evidence and administrative proceedings" on the matter.[10] At the hearing, the claimant or its representative may present arguments and witnesses for the ALJ's consideration.[11] The ALJ must conduct a de novo review of the evidence and issue "a written decision that gives the findings of fact, conclusions of law, and the reasons for the decision."[12]

If the claimant remains dissatisfied with the ALJ's determination, it may seek review by the MAC.[13] Medicare regulation 42 C.F.R. § 405.1112(b) states that a request for review "must identify the parts of the ALJ's . . . action with which the party requesting review disagrees and explain why he or she disagrees with the ALJ's . . . decision, dismissal, or other determination

---

[7] 42 C.F.R. § 412. 622(a)(5)(i–ii).

[8] 42 U.S.C. § 1395ff(b–c).

[9] 42 U.S.C. § 1395ff(d)(1); 42 C.F.R. § 405.1002.

[10] 42 C.F.R. § 405.1042.

[11] 42 C.F.R. § 405.1036(c–e).

[12] 42 C.F.R. §§ 405.1000(d); 405.1046(a)(1).

[13] 42 U.S.C. § 1395ff(d)(1)(2).

being appealed."[14]  The MAC "will limit its review of an ALJ's . . . actions to those exceptions" raised by a represented party in the request for review.[15]  The MAC's review of the issues raised in the request is de novo.[16]

**B.      Standards of review**

42 U.S.C. §§ 1395ff(b)(1)(a) and 405(g) confer jurisdiction on district courts to review the MAC's final determination.[17]  Under the standard articulated in § 405(g), "[t]he Secretary's decision to deny benefits will be disturbed only if it is not supported by substantial evidence or is based on legal error."[18]  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19]  Courts review the administrative record as a whole to determine whether substantial evidence supports the ALJ's determination.[20]  If the evidence "'is susceptible to more than one rational interpretation,' [then] the ALJ's decision should be upheld."[21]

Encompass contends that courts must also review a MAC's decision under the arbitrary-and-capricious standard articulated by the Administrative Procedure Act (APA).[22]  In the 2012 decision *International Rehabilitation Sciences Inc. v. Sebelius*, the Ninth Circuit applied both the

---

[14] 42 C.F.R. § 405.1112(b).

[15] 42 C.F.R. § 405.1112(c).

[16] 42 C.F.R. § 405.1100(c).

[17] 42 U.S.C. § 1395ff(b)(1)(A) (permitting judicial review of benefits determinations "as provided in section 405(g)"); § 405(g).

[18] *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Brown*, 881 F.2d 747, 750 (9th Cir. 1989)).

[19] *Id.*

[20] *Id.*; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

[21] *Ryan*, 528 F.3d at 1198 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

[22] ECF No. 40 at 155.

APA and § 405(g) standard to review a denial of Medicare coverage.[23]  But the Secretary contends that the United States Supreme Court cast doubt on that holding in its 2019 decision in *Smith v. Berryhill*.[24]  The Secretary cites the Court's observation in *Smith* that "[t]he Social Security Act and the APA are different statutes, and courts must remain sensitive to their differences"[25] for the proposition that only the SSA's review standard applies.[26]  But a plain reading of *Smith* does not support the Secretary's interpretation.  While *Smith* cautioned lower courts to be mindful of the differences between specific administrative schemes, it did not hold (or even suggest) that both schemes cannot apply to one action.  Nor did it hold that only the § 405(g) standard applies to cases like this one.  So I follow binding Ninth Circuit precedent and apply both the § 405(g) standard and APA's arbitrary-and-capricious standard.

Encompass contends that the MAC made several reversable errors in the 256 cases being appealed in this case.  It argues that the MAC erroneously applied 42 C.F.R. § 405.1112(b) to Encompass's requests for review and that its application of that regulation has been arbitrarily inconsistent.  Encompass also contends that the MAC was required to review ALJ decisions for clear error even if § 405.1112(b) limited its review.  It asserts that several ALJs came to conclusions based on three issues that it contends constitute clear error that the MAC should have caught: (1) using a patient's stability at the time of admission as a reason to deny coverage; (2) denying coverage because a patient's medical condition was not sufficiently complex; and (3) denying coverage because the patient didn't complete at least 15 hours of therapy per week.  Finally, Encompass takes issue with the ALJ's findings in 8 cases, contending that those

---

[23] *Int'l Rehab. Sciences, Inc. v. Sebelius*, 688 F.3d 994, 1000 (9th Cir. 2012).

[24] *Smith v. Berryhill*, 587 U.S. 471, 482 (2019).

[25] *Id.*

[26] ECF No. 41 at 23.

decisions were not based on substantial evidence or did not contain a sufficient explanation of the reasons supporting coverage denial.

**C.      The MAC properly applied 42 C.F.R. § 405.1112(b) to Encompass's deficient appellate statements.**

*1.      Section 405.1112(b) unambiguously requires more detail than Encompass supplied.*

Encompass first argues that the MAC erred when it determined that Encompass did not satisfy 42 C.F.R. § 405.1112(b) because Encompass failed to explain the reasons for its appeals. That regulation requires the request for review to "[i]dentify the parts of the ALJ's . . . action with which the party requesting review disagrees and explain why he or she disagrees with the ALJ's . . . decision, dismissal, or other determination being appealed."[27]  The regulation provides an example: "If a party requesting review believes that the ALJ's . . . action is inconsistent with a statute, regulation, [Centers for Medicare & Medicaid Services (CMS)] ruling, or other authority, the request for review should explain why" the requesting party believes there is such an inconsistency.[28]  In cases with represented beneficiaries (like this one), the regulation states that the MAC "will limit its review . . . to those exceptions raised by the party in the request for review."[29]  And if the request for review fails to conform to § 405.1112(b)'s requirements, the MAC "will adopt the ALJ's action without comment, unless the ALJ's decision or dismissal contains on its face a clear error of law."[30]

---

[27] 42 C.F.R. § 405.1112(b).

[28] *Id.* at § 405.1112(b).

[29] *Id.* at § 405.1112(c).

[30] Medicare Program: Changes to the Medicare Claims Appeal Procedures, 67 Fed. Reg. 69335 (Nov. 15, 2002).

7

When CMS promulgated § 405.1112(b) in 2002, it explained the purpose for the regulation in the Federal Register.  The prior rule did "not require appellants to include in their request for review the specific reasons that they disagree with an ALJ's decision," resulting in a cascade of requests that stated "only general reasons for appealing, such as 'I disagree with the ALJ's decision,' or 'The decision is not supported by the evidence and is inconsistent with the law.'"[31]  Those generalized appeals made the MAC's review "very time and labor intensive" and resulted in the MAC wasting time examining aspects of the ALJ's decision "with which the party may not actually disagree."[32]  So CMS promulgated § 405.1112(b) to require more specificity when represented beneficiaries appealed ALJ decisions.

Using the MAC's standardized review form (DAB-101),[33] Encompass submitted its 256 requests with one of two rationales:

> (1)     The beneficiary met the criteria for admission to the IRF. The ALJ's decision did not take into account all the testimony provided at the hearing. We reserve the right to file a supplemental brief pursuant to 405.1120; or
>
> (2)     The beneficiary met the criteria for admission to the IRF. We reserve the right to file a supplemental brief pursuant to 405.1120.[34]

The MAC found in each of the appealed cases that Encompass "did not identify the parts of the ALJ's decision with which it disagrees or explain why it disagrees with the ALJ's

---

[31] *Id.*

[32] *Id.*

[33]  Ctrs. for Medicare & Medicaid Servs., *Review by the Medicare Appeals Council*, https://www.cms.gov/medicare/appeals-grievances/managed-care/review-appeals-council (last modified Sept. 10, 2024).

[34] ECF No. 41 at 22.  I cite the ECF pagination when referring to the parties' briefs.

decision, as required by" § 405.1112(b).[35]  Because no specific objections were raised, the MAC reviewed each ALJ decision for clear error, didn't find any, and affirmed the decisions without further comment.  Encompass contends that the MAC's failure to conduct a merits review of the ALJs' determinations was improper because Encompass's requests for review fulfilled the plain-language requirements of § 405.1112(b).

Encompass and the Secretary agree that § 405.1112(b) is unambiguous, but their plain readings are diametrically opposed.  The Secretary contends that the regulation requires at least some detail to flesh out which of the ALJ's specific findings the appealing party disagrees with.  Encompass argues that because the ALJ's decisions address two big-picture issues—Medicare coverage for IRF services and Encompass's liability for non-covered services—§ 405.1112(b) merely requires that a request for review specify which of those two "parts" of the decision Encompass disagrees with.  Because Encompass's appeals referenced the IRF admission criteria, it contends that it "placed the issue of Medicare services squarely before" the MAC and thus satisfied the regulation.[36]

Encompass's interpretation of § 405.1112(b)'s requirements is unpersuasive.  The regulation unambiguously requires the content of the request for review to identify the point of disagreement ("the what") and explain why the requesting party disagrees ("the why").  Alleging that the ALJ did not account for all the testimony or that the beneficiaries met the criteria for admission to the IRF does not explain any specific legal or factual error the ALJs made that Encompass disagrees with.  Rather, these statements are general reasons for disagreement—the

[35] *See, e.g.*, AR I Vol. 19 at 3.

[36] ECF No. 40 at 159.

exact type of reasons the regulation deems impermissible.[37]  Encompass's argument that it need only pick a category of disagreement—coverage or liability—ignores the regulation's purpose of focusing on only those specific issues with which the appealing party disagrees.  Merely saying "I disagree with the ALJ's coverage determination" does not tell the MAC whether the appellant disagrees with the ALJ's factual findings, consideration of evidence (which usually consists of a record in the hundreds or thousands of pages), or any particular portion of the determination of each of the four IRF criteria that an ALJ may consider.  This is plainly not what the regulation requires.

### 2.   *Section 405.1112(b) does not conflict with other regulations governing appellate statements.*

Encompass also argues that the MAC's interpretation of § 405.1112(b) doesn't align with other regulations governing statements on appeal.[38]  Encompass points to § 405.1120, a regulation that permits—but does not require—the submission of written briefs in support of an appellants' review request.  Encompass argues that the MAC's interpretation of § 405.1112(b) conflates what is required to bring an appeal with a purely voluntary, longer statement of issues.  But stating the specific reason for disagreement with the ALJ's decision is not the same as writing a brief  "about the facts and law relevant to the case."[39]  The Federal Register addresses this specific scenario, explaining that § 405.1112(b) is not intended to require "formal briefs or other pleadings."[40]  It notes instead that, because providers and represented beneficiaries are "aware of Medicare coverage and payment policies" and are presumed by regulation "to have

---

[37] 67 Fed. Reg. at 69335.

[38] ECF No. 40 at 161.

[39] 42 C.F.R. § 405.1120.

[40] 67 Fed. Reg. at 69336.

constructive notice of CMS notices, including manual issuances, bulletins, or other written guides and directives from Medicare contractors," that "it is reasonable to require those parties to require [those] parties to state the basis for their disagreement with an ALJ's action . . . ."[41]  So, because § 405.112(b) does not require a written brief, but instead requires only a brief explanation of the appellant's disagreement, Encompass's argument is unpersuasive.

Encompass next argues that the MAC's standard form to appeal ALJ decisions does not give Encompass the space to provide the "what" and "why" of its disagreements, "call[ing] into question whether" the form "is even compliant with § 405.1112(b)."[42]  The DAB-101 form provides four lines of space to "specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ is wrong."[43]  It instructs appellants to "attach additional sheets if you need more space."[44]  Encompass's contention that it cannot comply with the regulation in that short space is specious.  Again, the regulation does not seek a fulsome exposition on the facts and law related to the appeal.  By adding just a little detail to its existing statements, Encompass could have met this requirement within the lines provided on the DAB-101.[45]  For example, a sufficient statement could have looked like this:

> I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated_____.  I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):
>
> The beneficiary met [x criteria, such as the physician-supervision requirement] for admission to the IRF.  The ALJ's decision did not account for the testimony [of y witness (such as the IRF physician) referencing the beneficiary's plan of care].  The ALJ also erred in finding that the beneficiary was too stable to be considered for IRF services.
>
> (Attach additional sheets if you need more space)

---

[41] *Id.*

[42] ECF No. 40 at 161.

[43] *Request for Review of Administrative Law Judge (ALJ) Medicare Decision/Dismissal*. HHS.gov. (June 11, 2025, at 9:55 PST), https://www.hhs.gov/sites/default/files/dab101.pdf.

[44] *Id.*

[45] Encompass's statements requesting review never exceeded more than two lines each.

Such a statement would have properly identified the points of disagreement and explained why the ALJ was wrong with room to spare. Encompass had ample opportunity to fill four lines of text, attach additional sheets, or choose to write its appeal on a document other than the standard form. But in the vast majority of appeals at issue here, it didn't.[46] So Encompass's argument that the MAC's standardized form suggests that the MAC's interpretation of § 405.1112(b) is erroneous is meritless.

### 3. *Encompass hasn't shown that the Secretary's application of § 405.1112(b) was inconsistent, arbitrary, or capricious.*

Encompass's final § 405.1112(b) argument asserts that the MAC's decisions were arbitrary and capricious because they treated Encompass "differently than similarly situated parties from prior cases."[47] It relies on two cases, *All Care Home Health* and *Jefferson Surgical Clinic, Inc.*, to contend that the MAC has previously conducted detailed reviews of claims that were not appealed in compliance with the regulation.[48] In *All Care Home Health*, the MAC concluded that the appellant's request for review did not comply with § 405.1112(b), supplied a brief summary of the factual and procedural background of the appeal, and adopted the ALJ's decisions without analysis.[49] The MAC did the same thing in all of the decisions that Encompass challenges here, so I cannot conclude that the MAC treated these similarly situated beneficiaries differently.

---

[46] I note that, in at least one case, Encompass attempted to file a supplemental brief. *See* AR II Vol. 2 (M-20-3345).

[47] ECF No. 40 at 166.

[48] *Id.* at 166–67.

[49] *In the Case of All Care Home Health*, 2013 WL 7872031 (H.H.S. Apr. 16, 2013).

In *Jefferson Surgical Clinic*, the appellant's request for review stated, "Worst telephone hearing that I have ever participated in. Please listen to the tape. ALJ was confused and rambling. Please re-consider."[50] Though the MAC found that this statement "f[ell] short of the requirements set forth" in § 405.1112, it analyzed what transpired at the hearing and modified "the ALJ's decision to expand its reasoning."[51]

The information contained in the request for review in *Jefferson Surgical Clinic* contains more targeted information than either of the undetailed requests that Encompass supplied in its requests. It pointed to a "specific aspect of the record or review in its appeal,"[52] while Encompass's requests did not. Nothing about these differences shows that the MAC has engaged in "unexplained, inconsistent treatment" of its application of § 405.1112(b).[53] So I reject Encompass's argument that the MAC applied §405.1112(b) inconsistently, arbitrarily, capriciously, or in a manner unauthorized by law. I thus deny Encompass's summary-judgment motion on this issue and grant the Secretary's because the MAC's application of § 405.1112 was not reversible error.

---

[50] *In the Case of Jefferson Surgical Clinic, Inc.*, 2012 WL 4760802, at *2 (H.H.S. Sept. 4, 2012).

[51] *Id.* at *1.

[52] *Encompass Health Rehab. Hosp. of Charleston, LLC v. Becerra*, 2024 WL 3833197, at *10 (D.S.C. Aug. 15, 2024) (rejecting identical argument from an Encompass hospital in South Carolina).

[53] ECF No. 40 at 166.

**D.      The ALJ decisions did not contain clear legal error.[54]**

Encompass next takes issue with some ALJ decisions on the basis that they applied "incorrect coverage standards for IRF services," which it alleges constituted clear error that the MAC should have caught on review.[55]  Encompass identifies three such errors: (1) some ALJs misapplied the IRF criteria by denying coverage for patients who were deemed "too stable" at the time of admission; (2) some ALJs erred by denying coverage for patients whose medical needs were not sufficiently "complex"—a standard that, according to Encompass, isn't part of the IRF criteria; and (3) some ALJs erred in denying coverage for patients who didn't complete 15 hours of therapy services per week because the IRF's hourly therapy criterion merely sets out an industry standard, not a strict requirement.[56]  The Secretary responds that each ALJ decision challenged on these grounds was based on the correct application of IRF criteria.

### 1.      The ALJs did not impose a "stability" requirement.

Encompass argues that coverage was improperly denied for nine IRF beneficiaries because the ALJs wrongly concluded that they were *too stable* at admission.[57]  It contends that

---

[54] The Secretary contends that this court should not consider Encompass's clear-error arguments because Encompass failed to raise those arguments before the MAC, and they are thus waived. ECF No. 43 at 3.  It cites the Eleventh Circuit's unpublished opinion in *Rehab. Hosp. of Phenix City v. Sec'y, U.S. Dep't of Health and Human Servs.*, 2025 WL 2216616 (11th Cir. Aug. 5, 2025), in which the court found that "the Medicare regulations generally require exhaustion of an issue by the Appeals Council to preserve review in the federal courts" and, although the MAC is permitted to remedy clear legal errors, that "does not mean [the claimant] was not required to raise [the clear-error issue] to the Appeals Council." *Id.* at *3 (citing *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 327–28 (9th Cir 2020)).  Because Encompass's clear-error claims fail regardless, I need not, so do not, reach this issue here.

[55] ECF No. 40 at 154.

[56] *See id.* at 168–74.

[57] *Id.* at 168–170 (identifying the nine cases by the records contained in AR I. Vol. 19, AR I Vol. 20, AR I Vol. 95, AR I Vol. 196, AR I Vol. 197, AR I Vol. 204, AR I Vol. 205, AR II Vol. 13, and AR II Vol. 18).

the regulations require that all IRF beneficiaries be "sufficiently stable at the time of admission," so the ALJ's reliance on extra stability as a reason to deny care is inconsistent with those regulations.[58]

Encompass reads too much into the ALJs' reference to stability in these nine cases. While the IRF criteria require that a beneficiary "is sufficiently stable at the time of admission to the IRF to be able to actively participate in the intensive rehabilitation therapy program," it also requires a beneficiary "require[] the active and ongoing therapeutic intervention of multiple therapy disciplines . . . ."[59] So although a patient must be "sufficiently stable" to participate in IRF services, if his needs could have been met in a lower-intensity setting or without close physician supervision, then IRF services may not be appropriate. In each of the ALJs' challenged decisions, the stability findings were made with reference to the fact that the beneficiary's rehabilitation "could have been performed in a less intensive setting"[60] or that the beneficiary's condition did not require the "close supervision of a physician."[61] And they didn't

---

[58] *Id.*; 42 C.F.R. § 412.622(a)(3)(iii).

[59] 42 C.F.R. § 412.622(a)(3)(i–iii).

[60] AR I Vol. 19 at 15; *see also* AR I Vol. 20 at 15 (noting that the beneficiary remained stable throughout his IRF stay, did not have any "unstable co-morbidities at the time of admission," and that his documentation "does not support than an IRF level of care was needed to treat" the beneficiary's condition); AR I Vol. 95 at 16 (noting that the beneficiary was stable at the time of admission and during the IRF course and thus "did not require close physician supervision to ensure his safe and successful completion of his rehabilitative goals"); AR I Vol. 196 at 19 (noting that "the beneficiary was clinically stable at the time of admission and did not have diagnoses or comorbidities requiring the close supervision of a physician"); AR I Vol. 205 at 20 ("The beneficiary was also clinically stable and did not exhibit signs or symptoms at the time of admission requiring the close supervision of a rehabilitation physician in an IRF setting."); AR II Vol. 13 at 54 (finding that the "documentation does not establish that the beneficiary required close physician involvement in her care as provided in an IRF setting" in part because the beneficiary "was in a medically stable condition at the time of admission to the IRF").

[61] AR I Vol. 95 at 16 (noting that the beneficiary was stable at the time of admission and during the IRF course and thus "did not require close physician supervision to ensure his safe and successful completion of his rehabilitative goals"); AR I Vol. 196 at 19 (noting that "the

15

stand alone.  Each ALJ decision that referenced stability also contained a detailed review of the record and an explanation as to why the beneficiary's conditions and functional capacity didn't require intensive rehabilitative care.  The fact that a beneficiary remained stable throughout IRF was merely a supporting factor to show that they could have been treated at a lower level of care.  So I do not find that the ALJs' references to stability constitute clear legal error.

### 2.      The ALJs didn't impose an erroneous "complexity" requirement.

Encompass argues that 27 IRF coverage denials were improperly determined by the ALJ's imposition of a medical or functional "complexity" criterion.[62]  Encompass claims that since the MAC's regulations for IRF do not mention, define, or provide examples of "medical complexity," it cannot be used a basis to deny claims.[63]

While the term "complexity" is not defined in the regulations, it is not foreign to the subject matter of Medicare patient eligibility.[64]  The agency's Medicare Benefit Policy Manual uses the term, explaining that IRF services are appropriate if "the documentation in the patient's IRF medical record indicates a reasonable expectation that the complexity of the patient's nursing, medical management, and rehabilitation needs requires an inpatient stay and an

---

beneficiary was clinically stable at the time of admission and did not have diagnoses or comorbidities requiring the close supervision of a physician"); AR I Vol. 197 at 19 ("The beneficiary was clinically stable and did not exhibit signs or symptoms at the time of admission requiring the close supervision of a rehabilitation physician."); AR I Vol. 204 at 19 ("The beneficiary was also clinically stable and did not exhibit signs or symptoms requiring the close supervision of a rehabilitation physician."); AR II Vol. 18 at 54–56 (after receiving a procedure, beneficiary was "medically stable upon his transfer to the IRF" and "there were no new medical conditions or an exacerbation of any existing conditions to justify that the beneficiary required extensive and close physician involvement in his care and rehabilitation").

[62] ECF No. 40 at 171.

[63] Id.

[64] See Rehab. Hosp. of Phenix City, LLC v. Becerra, 2024 WL 4713572, at *6 (M.D. Ala. Nov. 7, 2024).

interdisciplinary team approach."[65]  And the IRF criteria confirm that a beneficiary must "require[] the active and ongoing therapeutic intervention of multiple therapy disciplines" and supervision by a rehabilitation physician.  By referencing complexity, it appears that the ALJs were simply using the term as a shorthand for the requirement that a beneficiary's medical needs must be of a type that requires interdisciplinary treatment and close physician supervision. [66]  So I find that the ALJs did not err in referencing complexity in the challenged decisions.

### 3.    *The ALJ did not err when invoking the 15-hours-of-therapy expectation.*

Section § 412.622(a)(3)(ii) provides that, to meet the requirements for IRF services, "there must be a reasonable expectation . . . at the time of the patient's admission" that the patient "generally requires and can reasonably be expected to actively participate in, and benefit from, an intensive rehabilitation therapy program."  The regulation goes on to explain that "[u]nder current industry standards, this intensive rehabilitation therapy program generally

---

[65] *Medicare Benefit Policy Manual (MBPM),* Ctrs. for Medicare and Medicaid Servs. (last visited July 7, 2025, at 16:24 PST), https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/bp102c01.pdf (further elaborating that "the complexity of the patient's condition must be such that the rehabilitation goals indicated in the preadmission screening and the overall plan of care can only be achieved through period team conferences—at least once a week—of an interdisciplinary team of medical professionals" (cleaned up)).

[66] *See, e.g.*, AR I Vol. 2 at 32 ("Based on the foregoing considerations, I find no specific documentation demonstrating how Beneficiary presented with the degree of clinical complexity to necessitate the supervision of a rehabilitation physician in an intensive interdisciplinary setting."); AR I Vol. 4 at 27 (same); AR I Vol. 5 at 31 (same); AR I Vol. 15 at 31 (same); AR I Vol. 24 at 15 ("While the Beneficiary had co-morbidities, including Parkinson's which affected hand movement, Beneficiary was not a clinically complex individual who required close physician supervision while receiving rehabilitation" and didn't need supervision "in an interdisciplinary setting."); AR I Vol. 25 at 15 ("Based on the foregoing considerations, I find no specific documentation demonstrating how the Beneficiary presented with the degree of clinical complexity to necessitate the supervision of a rehabilitation physician in an intensive interdisciplinary setting."); AR I Vol. 26 at 15 ("After a thorough review, I agree . . . that the Beneficiary's condition was not of such a degree of medical complexity to require the supervision of a rehabilitation physician in an inpatient setting."); AR I Vol. 40 at 17 ("I find the documentation does not paint a picture of a clinically complex beneficiary with medical and nursing needs that required close supervision by a rehabilitation physician.").

17

consists of at least 3 hours of therapy (physical therapy, occupational therapy, speech-language pathology, or prosthetics/orthotics therapy) per day at least five times per week."[67]  Encompass contends that in 31 decisions, the ALJs erred when they used the fact that the beneficiaries didn't actually receive 15 hours of therapy per week to deny coverage.[68]  Encompass asserts that the regulation doesn't require 15 hours of weekly therapy—it merely recites the general industry standard for therapy hours—so the ALJs' denials of coverage based on a lower number of therapy hours was clearly erroneous.[69]

The Secretary contends that ALJs considered the beneficiaries' therapy hours as "one factor in determining that they did not meet the IRF criteria at the time of admission" and that the regulations do not preclude the ALJs from considering a beneficiary's completed therapy hours "when determining whether the IRF stay was reasonable and necessary."[70]  It reasons that the ALJs noted that the 15-hour requirement was a "general" one and that they properly weighed "the available evidence in the record—including the amount and nature of the therapy each beneficiary received—to determine if each beneficiary had therapeutic and medical needs intense enough to warrant an intensive therapy program . . . ."[71]

The ALJs' consideration of the fact that these beneficiaries' completed hours amounted to fewer than what the regulatory guideline suggested was not legally erroneous.  A review of the decisions shows that the ALJs merely used that information to infer that it wasn't reasonable to conclude that those beneficiaries would need intensive therapy at the time of admission.

---

[67] 42 C.F.R. § 412.622(a)(3)(ii).

[68] ECF No. 40 at 172–74.

[69] *Id.*

[70] ECF No. 41 at 37–38.

[71] *Id.* at 38.

18

Encompass puts too much weight on the term "generally" in the IRF criterion for therapy hours. That standalone requirement permits the ALJ to determine whether the number of therapy hours recommended and ultimately completed demonstrate that a patient's referral to IRF services is reasonable and necessary. By invoking that requirement, the ALJs did not commit legal error.

Encompass also argues that it was illogical for the ALJs to consider the actual number of therapy hours that a patient received, when they should have considered whether a patient could be reasonably expected to participate and benefit from a regular therapy program at the time of admission only.[72] But the regulation itself seems to expect that an ALJ would consider whether the therapy occurred and actually helped the patient. It notes that the benefits of therapy are "demonstrated by measurable improvement that will be of practical value to the patient in improving the patient's functional capacity or adaptation to impairments," and it requires that those therapy hours begin within 36 hours of the patient's date of admission.[73] This regulatory language implies that an ALJ may consider whether the type and amount of therapy a patient receives is reasonably expected to provide a benefit. Encompass has not shown that the ALJs' use of record evidence to determine whether a physician's initial assessment of a patient's required therapy hours was reasonable at the time of admission was clear error.

**E.      The ALJs' challenged decisions are supported by sufficient explanation and substantial evidence.**

Encompass next alleges that, in a handful of cases, the MAC's decisions were not supported by substantial evidence or lacked a sufficient explanation to permit meaningful judicial review. The Secretary responds that the decisions are adequately supported, but he

---

[72] ECF No. 42 at 25–26.

[73] 42 C.F.R. 412.622(a)(3)(ii).

asserts that this court shouldn't even consider Encompass's arguments because they weren't raised before the MAC and are thus unexhausted.[74]  Encompass retorts that the Secretary waived its exhaustion argument by failing to plead it as an affirmative defense.[75]  I do not resolve this waiver issue because Encompass's arguments fail on their merits.

### 1.    *M-20-3345*[76]

For this patient, Encompass solely contends that the MAC's "finding" that it did not receive a supplemental brief from Encompass for appeal M-20-3345 is erroneous.  Encompass did indeed file a supplemental brief—three years after it filed its request for review and two months before the MAC issued its decision.[77]  It argues that "the Council's finding that it had not received a supplemental brief from Encompass Health prior to issuance of the final decision for this case is not supported by substantial evidence," and appears to contend that this patient's case should be remanded because the administrative record was incomplete.[78]  The Secretary responds that Encompass didn't follow the regulations when filing its supplement, which state that, "*upon request*, the Council will give the party requesting review . . . a reasonable opportunity to file briefs or other written statements."[79]  Encompass never requested that it be

---

[74] ECF No. 41 at 39–40.

[75] ECF No. 42 at 27.

[76] To keep this order free from reference to confidential medical information, I refer to these cases by their assigned appellate number.  I also note that Encompass withdrew is substantial-evidence appeal of appeal no. M-21-1053.  ECF No. 42 at 32.

[77] *See* ECF No. 40 at 176–77 (citing AR II Vol. 2).

[78] *Id.*

[79] 42 C.F.R. § 405.1120 (emphasis added).

permitted to file a brief, the Secretary argues, so the MAC was under no obligation to consider it.[80]

Encompass has not met its burden to show that the MAC erroneously disregarded its supplemental brief or that this is an issue that can be resolved under the substantial-evidence standard.  It does not respond to the Secretary's regulatory argument other to say that its submission of a brief "clearly constitutes a request" for the MAC to consider it.[81]  That circular argument does not comport with the regulation's process for the orderly filing of written briefs.  And Encompass does not present argument for why, had the supplemental brief been considered, the MAC and ALJ erred in denying coverage for this claim.  So I find that Encompass is not entitled to remand for patient M-20-3345.

### 2. *M-21-245*

The MAC affirmed the ALJ's decision in appeal M-21-245 because the ALJ properly found "that the Plan of Care (POC) 'does not include mandatory information regarding the beneficiary's participation in'" physical therapy "and that 'the beneficiary failed to meet the minimum intensive therapy requirement without clinical exception.'"[82]  Encompass disputes the POC finding and relies on its broader argument that it was error to rely on the patient's completion of less than 15 therapy hours to deny coverage.[83]  But as explained supra, the ALJ's focus on the 15-hour therapy requirement is not erroneous so, even if the POC finding is not supported by substantial evidence, the MAC provided a valid reason for affirming the ALJ's denial of coverage.  Encompass is thus not entitled to remand on appeal M-21-245.

---

[80] ECF No. 41 at 43.

[81] ECF No. 42 at 29.

[82] AR II Vol. 7 at 4.

[83] ECF No. 40 at 177–78.

### 3.     *M-20-3508*

The MAC affirmed the ALJ's decision in appeal M-20-3508 in part because "the ALJ concluded that the record did not support that the beneficiary's medical, rehabilitation, and nursing needs were of such complexity that close physician supervision was required at the time of admission to the IRF."[84]  Encompass takes issue with the other reasons the MAC gave and reasserts that the "complexity" rationale relied on by the ALJ is legally erroneous.  But as discussed supra, an ALJ may consider whether the patient's comorbidities require intensive services—a consideration that complexity is obviously relevant to.  So because one of the reasons the MAC gave is sufficient to affirm this patient's denial of coverage, the MAC's decision on M-20-3508 is affirmed.

### 4.     *M-21-2295*

The care of the patient in M-21-2295 was found ineligible for IRF coverage because he didn't receive 15 hours, or 900 minutes, of therapy in the first week, and instead received 885 minutes of therapy.[85]  Encompass argues that the MAC impermissibly adopted the ALJ's decision to deny care because the ALJ miscalculated the amount of therapy hours this patient received in his first week at IRF.[86]  The Secretary argues that Encompass is calculating incorrectly by including group- and concurrent-therapy time in the calculation, which would only be permissible if justified in a patient's medical record.[87]

The MAC's adoption of the ALJ's decision for this patient is supported by substantial evidence.  Sub-regulatory guidance outlines that the IRF standard of care is individualized

---

[84] AR I Vol. 38 at 4.

[85] AR I Vol. 124.

[86] ECF No. 40 at 179–80.

[87] ECF No. 41 at 45–46.

therapy, though group therapies may serve only as an adjunct to individualized therapy when it is justified in the patient's medical record.[88] The IRF criteria and sub-regulatory guidance can be rationally interpreted to consider only individualized therapy, as it is the standard of care for this type of treatment, when determining if a patient's medical needs require IRF services.[89]

### 5. M-21-3396

Patient M-21-3396 was found ineligible for IRF coverage because her interdisciplinary plan of care didn't contain a discharge destination or estimated length of stay in the IRF.[90] The IRF criteria requires that a patient's medical record be detailed and comprehensive, including in the expected length of time in treatment and the anticipated discharge destination.[91] Encompass argues that the patient's medical record, including the anticipated length of stay of "2–3 weeks" and discharge destination of "home," was detailed and comprehensive.[92] The Secretary characterizes the medical record as too vague and inadequate to support the patient's need for IRF care.[93]

The MAC's adoption of the ALJ's decision for this patient is supported by substantial evidence. Sub-regulatory guidance provides context to the criteria's requirement that medical records must be detailed and comprehensive by explaining that the overall plan of care should detail the total number of days the patient's IRF stay will be.[94] A reasonable mind could view

---

[88] Medicare Benefits Policy Manual, Ch.1 § 110.2.2.

[89] AR I Vol. 124.

[90] AR I Vol. 157.

[91] 42 CFR § 412.622(a)(4)(i)(B).

[92] ECF No. 42 at 34–35.

[93] ECF No. 41 at 46–48.

[94] Medicare Benefits Policy Manual, Ch.1 § 110.1.3.

the patient's anticipated duration and anticipated discharge destination as not detailed or comprehensive enough to demonstrate that this care was medically necessary.

### 6.   M-22-387

Patient M-22-387 was found ineligible for IRF coverage because his medical records don't support that his treatment meets the interdisciplinary team meeting standards.  In order for IRF to be found medically necessary, the patient's interdisciplinary treatment team, consisting of a licensed or certified therapist from each discipline involved in a patient's treatment, must meet every week.[95]  The MAC found that on October 5, 2016, the patient's treatment team had a conference that didn't include signed notes from a registered occupational therapist who was present at the meeting, and it affirmed the ALJ's determination for that reason.[96]  Encompass argues that the therapist being present is sufficient despite her not signing the record and that making a decision on that basis isn't supported by substantial evidence.[97]

The MAC's adoption of the ALJ's decision for this patient is supported by substantial evidence.  The regulation requires the patient's medical record to document weekly interdisciplinary team meetings,[98] and medical records must be validated by a physician's signature and credentials,[99] not by merely typing the physician's name.[100]  A reasonable mind could conclude that the lack of notes from a member of the patient's interdisciplinary team

---

[95] 42 CFR § 412.622(a)(5).

[96] AR I Vol. 192.

[97] ECF No. 40 at 180–81.

[98] 42 CFR § 412.622(a)(5).

[99] *United States ex rel. Anita Silingo v. WellPoint*, 904 F.3d 667, 673 (9th Cir. 2018).

[100] *Id.* at 674.

shows that the medical record doesn't support the need for IRF care.[101]  So the MAC's decision in appeal M-22-387 is affirmed.

### 7.      *Encompass does not adequately show that two additional appeals were denied without sufficient explanation.*

Finally, Encompass contends that two ALJ decisions must be remanded because they lacked sufficient explanation.[102]  "A satisfactory explanation of agency action is essential for adequate judicial review because the focus of judicial review is not on the wisdom of the agency's decision but on whether the process employed by the agency to reach its decision took into consideration all the relevant factors."[103]  "If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration . . . ."[104]

In both cases that Encompass challenges, the ALJs provided adequate explanations of their decisions.  For appeal M-21-2062, the ALJ outlined the beneficiary's pre-admission and post-admission level of function, his medical issues, and his interdisciplinary plan of care.[105]  With these factors in mind, the ALJ determined that the beneficiary's medical needs were not so complex that IRF was medically reasonable and necessary.[106]  For appeal M-22-119, the ALJ described the timeline of the beneficiary's treatment leading up to IRF, her medical issues, and

---

[101] 42 CFR § 412.622(a)(5).

[102] ECF No. 40 at 174–76.

[103] *Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980) (cleaned up).

[104] *Id.* at 1160.

[105] AR I Vol. 121.

[106] *Id.*

the beneficiary's participation in interdisciplinary care.[107]  The ALJ determined that the beneficiary's limited participation in the interdisciplinary care IRF is designed to render demonstrated that the IRF services were not necessary.[108]

From these ALJ determinations, I am able to discern what decision the ALJ made and what evidence he relied on to reach that decision.  The ALJ made the determination that coverage was not available in either of these cases because neither case demonstrated that IRF treatment was medically reasonable and necessary for these beneficiaries to make measurable improvement through IRF services.  In each decision, the ALJ provided facts underlying his denial throughout his decision.[109]  I find that both of those decisions contained sufficient explanation to permit judicial review.  So I decline to remand these cases on that basis.

**Conclusion**

IT IS THEREFORE ORDERED that Encompass's summary-judgment motion **[ECF No. 40] is DENIED** and the Secretary's cross-motion **[ECF No. 41] is GRANTED.**  The final agency decisions at issue in this case are AFFIRMED.  The Clerk of Court is directed to ENTER JUDGMENT for the defendant and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
March 19, 2026

---

[107] AR I Vol. 188.

[108] *Id.*

[109] *See, e.g.*, AR I Vol. 121 at 19 (noting discrepancy in records concerning the patient's ability to ambulate and perform functions of daily living independently); AR Vol. 188 at 20 (finding that the beneficiary participated in only 77.2% of one-on-one services and that the additional group therapy he participated in "does not constitute the intensity to support the need for IRF services").